UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| INDUSTRIA LECHERA DE PUERTO RICO INC.,<br><br>    Plaintiff,<br><br>v.<br><br>CARLOS FLORES, in his official capacity as SECRETARY OF THE PUERTO RICO DEPARTMENT OF AGRICULTURE;<br>MARIA DEL CARMEN MARTINEZ CAMPOS, in her official capacity as, INTERIM ADMINISTRATOR OF THE PUERTO RICO MILK INDUSTRY REGULATORY OFFICE | Civil No.: 17-1885 (DRD) |

**MOTION TO DISMISS FOR FAILIURE TO STATE A CLAIM**

**TO THE HONORABLE COURT:**

**NOW COMES** Defendant, Agronomist María del Carmen Martínez Campos, the Interim Administrator (the Administrator) of the Puerto Rico Milk Industry Regulatory Office (ORIL under its Spanish language acronym), by and through the undersigned attorneys and for its Motion to Dismiss the complaint filed by Plaintiff, Industria Lechera de Puerto Rico, Inc. (Indulac) for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

**I.
INTRODUCTION AND SUMMARY OF MOTION**

The Administrator removed to the District Court the administrative review proceeding that Indulac filed before the Courts of Puerto Rico through which it challenges certain milk price order with effective date of June 1, 2017 Price Order (the June 2017 Price Order).  Dkt. #1.  Indulac alleges that the June 2017 Price Order is illegal because

the Administrator did not comply with Article 16 of Act 34 of June 11, 1957 (P.R. Laws Ann. Tit. 5, §1107).  According to Indulac, the Administrator was obligated under Puerto Rico statute to hold public hearings, publish a market study to justify a price increase, and publish the change in price to the public prior to issuing the June 2017 Price Order.  Since the Administrator did none of these things when she reinstated the regulatory accrual surcharge to the price of all fluid milk sold in Puerto Rico, Indulac argues that the June 2017 Price Order is void.

The Administrator seeks by separate motion a preliminary and permanent injunctive remedy against Indulac and the Court of First Review from interfering with the Settlement and the Judgment. Dkt. #6.  Therein, the Administrator set forth the factual underpinnings and the legal basis for three of her defenses.  The Administrator is quite likely to succeed on the merits that the relitigation exception of the Anti-Injunction Act bars the Removed Action, that Indulac is precluded from challenging the June 2017 Price Order and Indulac is barred from collaterally attacking the District Court's judgment in any other judicial forum.  *Id*., p. 10-15.  These defenses and their substantiation are incorporated in this motion as if fully transcribed therein.

Indulac has "acquiesced" to the District Court's jurisdiction and now requests that the District Court entertain its challenge to the June 2017 Price Order "expeditiously". Dkt. #10, p. 3.  This motion to dismiss the Removed Action will address the core challenge raised by Indulac, that is whether the Administrator was under the obligation to follow Puerto Rico laws prior to issuing the June 2017 Price Order to impart legal imprimatur on the order.  The judicial authorities cited herein reveal that the Administrator was not under the obligation to follow *verbatim* local laws to comply with

the Settlement.  Accordingly, she moves the District Court, which now has jurisdiction over the instant matter, to dismiss the Removed Action.

## II.
## THE FACTS AS ALLEGED IN THE COMPLAINT

The following are the operative facts alleged in the Removed Action:

1. The June 2017 Price Order was issued on May 31, 2017 by the Administrator. Dkt. #1, Exhibit 1, p. 2, ¶IV-1.

2. Indulac was notified of the June 2017 Price Order on May 31, 2017. *Id.*, ¶IV-2.

3. The June 2017 Price Order increases the price of UHT milk to be paid at the consumer level from $1.92 to $1.95. *Id.*, ¶IV-3, 6.

4. The change in price would be effective on June 1, 2017. *Id.*, ¶IV-4.

5. The June 2017 Price Order does not advise an adversely affected party of their right to request judicial review or that such review could be filed in the Court of First Instance. *Id.*, ¶IV-5.

6. The June 2017 Price Order increased the price of UHT milk without holding public hearings duly notified, without the appearance and recommendation of the Secretary of the Department of Consumer Affairs and did not rely on a market study as required by Act 34. *Id.*, ¶IV-7.

7. Indulac sent a letter to the Administrator claiming that the June 2017 Price Order was illegal and ultra vires. *Id.*, ¶IV-8.

The following will complete the District Court's understanding of the operative facts.

8. The District Court issued a Preliminary Injunction (Dkt. #480; 04-1840) through which it ordered the Administrator to, *inter alia*, "adopt a temporary mechanism that will allow [respondents] to recover the new rate of return… for the year 2003…and up to the day when they begin to recover said rate." *Vaqueria Tres Monjitas, Inc., v. Laboy,* 2007 LEXIS 98950, p. 181. With regard to such remedy, the court provided that "[t]he Administrator may so act through regulatory accruals, special temporary rates of return or any other available mechanism of [the Administrator's] choosing." *Id*.

9. Notwithstanding Defendants appeals and challenges to the propriety of the regulatory accrual remedy and in compliance with the District Court's order, the Administrator of ORIL promulgated Price Order dated April 17, 2008 (the April 2008 Price Order). The promulgation of the April 2008 Price Order followed the required processes under Puerto Rico law. The April 2008 Price Order provided for a regulatory accrual sur-charge upon every quart of fluid milk sold in Puerto Rico, and was imbedded in the price of the products sold to the consumer for the purpose of compensating respondents for their lost revenues.

10. Defendants informed the District Court of the adoption of the April 2008 Price Order, which originally provided for the regulatory accrual sur-charge imbedded in the price of all fluid milk sold in Puerto Rico at the consumer level. Dkt #846 and Dkt #850.

11. The District Court provided the parties with an opportunity to challenge the April 2008 Price Order. Dkt. #833. Six challenges were filed. *See* Dkts. #858 (PRDFA's Challenge), #859 (VTM's Challenge), #861 (Suiza's Challenge), #862 (Indulac's Challenge), #863 (CUD's Challenge) and #865 (Ganaderos Unidos'

Challenge).  No party to the action challenged the regulatory accrual sur-charge implemented via the April 2008 Price Order.  The first opportunity that Indulac had to challenge the regulatory accrual sur-charge was at that time during the litigation before the District Court.  Ironically, the only challenge brought by Indulac was against the "balancing plant credit," which was challenged as having "the precise opposite of what the credit intends to achieve." Dkt. #862, p. 2.  The District Court acknowledged on more than one occasion that the regulatory accrual sur-charge was an effort to comply with the preliminary injunction, and even the Court of Appeals noted that "[i]n compliance with the district court's injunctive order, ORIL adopted an administrative order which directed that 1.5 cents from the sale of each quart of milk be earmarked for the purpose of complying with the regulatory accrual mechanism." *Vaqueria Tres Monjitas v. Irizarry*, 600 F. 3d 1, 2 (1st Cir. 2010).

12. The regulatory accrual sur-charge continued to be in vigor through the several Price Orders issued thereafter while the case was litigated.  During the period between the April 2008 Price Order and the Settlement, Indulac collected the regulatory accrual sur-charge imbedded in the price of the fluid milk it sold consumers and transferred it to the Administrator for eventual payment to the processing plants.

13. On October 29, 2013, Defendants, Secretary of Agriculture of Puerto Rico (the Secretary) and the Administrator, together with Plaintiffs, Suiza Dairy, Inc. (Suiza), and Vaquería Tres Monjitas, Inc. (VTM), executed the Settlement thereby "settl[ing] all matters pending in the [ ] action in the interest of justice without conceding" to Suiza or VTM's allegations or the court decisions that had brought the parties to that stage of litigation.  Dkt. #2322, p. 1, ¶2.

14. The District Court approved the Settlement and incorporated its terms into an Order and Judgment. Dkt. #2347.

15. After the parties settled the case, the District Court afforded the PRDFA and Indulac the opportunity to challenge the Settlement[1]. Both intervenors filed motions challenging the Settlement. Indulac moved the District Court to alter and/or amend the Judgment. Dkt. #2409. Thus, a second opportunity was afforded to Indulac to challenge the regulatory accrual sur-charge. Indulac then challenged the regulatory accrual and its payout. *Id*., p. 11 ("…ORIL pretends to shift a significant portion of the burden of the illegally agreed regulatory accrual amount to [Indulac]."). Curiously, it also challenged the elimination of the balance credit it did not want to begin with. *Id*. Clearly, Indulac understood the ramifications of the Settlement, particularly with regards to the application of the regulatory accrual sur-charge to all fluid milk. The District Court denied Indulac's motion to alter or amend. An appeal was filed by Indulac, but dismissed by the Court of Appeals as untimely. *Vaquería Tres Monjitas, Inc., v. Comas Pagán*, 772 F.3d at 960.

16. The Settlement contains a number of agreements related to the regulatory accrual. *See* Dkt. #2322, p. 3-5, ¶¶8, 9, 10, 11, 12, 13, and 14.

17. Pursuant to the Settlement, the regulatory accrual sur-charge "w[ould] be deferred" between November 7, 2013 and December 31, 2016, and reinstated by January 1, 2017. Dkt. #2322, p. 4, ¶13[2]. It is axiomatic that deferment is the act of postponing

---

[1] *See PRDFA v. Pagan*, 748 F. 3d 13, 20 (1st Cir. 2014) ("It is true that the district court entered the Agreement on November 7 without first hearing PRDFA's objections. But it is also true that the court immediately stayed its order in light of the objections and gave PRDFA (and Indulac) ample opportunity to review the Agreement and to be heard.")

[2] Paragraph 13 states:

>13. By the date of execution of this agreement, the plants have been collecting three cents of regulatory accrual charge and the monies collected have already been deducted from the

something. In the context of paragraph thirteen of the Settlement, the deferment referred to the act of collecting the regulatory accrual sur-charge on all fluid milk for a period of time set forth in the Settlement.

18. The Settlement included a Price Order pre-dated November 7, 2013 (the November 2013 Price Order), which for the first time in many years did not contain the regulatory sur-charge over all fluid milk. Dkt. #2322-2.

19. Pursuant to the Settlement, the price of fluid milk did not include regulatory accrual sur-charge for three years. *Id*.

20. Indeed, when the Administrator issued his July 14, 2014 Price Order (the July 2014 Price Order), he did not include a regulatory accrual sur-charge.

21. By Price Order 2016-25 dated December 26, 2016 (the December 2016 Price Order), the Administrator, in compliance with the Settlement, reestablished the regulatory accrual sur-charge over fresh milk effective January 1, 2017.

22. The sur-charge was made extensive over all fluid milk through the now challenged June 2017 Price Order.

23. The June 2017 Price Order only reestablished a regulatory accrual sur-charge upon all fluid milk, which had been in vigor five years prior to a settlement of a federal claim and was differed for three years pursuant thereto.

---

regulatory accrual to obtain the unpaid principal mentioned in paragraph 8 above. When the New ORIL Price Order, Exhibit 2, enters into effect on November 7, 2013, 3 cents out of the regulatory accrual charge to pay out the principal as of 2028, will bel deferred until January 1, 2017.

## III.
## THERE IS NO CAUSE OF ACTION IN THIS COMPLAINT UPON WHICH RELIEF MAY BE GRANTED

### A.     The Fed. R. Civ. P. 12(b)(6) Standard.

Fed. R. Civ. P. 12 (b)(6) provides that an action may be dismissed if it fails to state a claim upon which relief may be granted.  Accordingly, a complaint will not be dismissed unless it appears without a doubt that the plaintiff can prove no set of facts that would entitle him to relief.  *Gonzalez v. Hernández*, 221 F. 3d 45 (1st Cir. 2000).  Since Indulac can prove no set of facts that would entitle it to relief, the Administrator moves the District Court to dismiss the Removed Action for the reasons set forth in her Motion for Injunctive Relief (incorporated herein by reference) and for the reasons set forth below.

### B.     The June 2017 Price Order is an Act that Arises under the Settlement and does not Require prior Compliance with Act 34 or the Puerto Rico Administrative Procedures Act.

The Administrator has been delegated numerous powers, attributes and functions pursuant to Act 34.  The Administrator has been specifically delegated quasi-legislative function to fix prices for fluid milk and milk by-products.  P.R. Laws Ann., tit. 5, §1096(b)(14).  According to Act 34, the Administrator is required to follow certain procedures prior to issuing a price order.  P.R. Laws Ann., tit. 5, §1107(d) ("The Administrator shall fix the maximum, minimum or only price for liquid milk, including surplus, in its different denominations, this being types, formulas or categories in all and any of the distribution channels and levels.").  In doing so, "[a]ny determination of prices shall be the product of a process of duly convoked public hearings." *Id*.  The Department

of Consumer Affairs also participates in the hearings, Secretary of which "shall appear in representation of consumers [and] render a report…[which] [t]he Administrator shall take into consideration…". *Id*.

But, it has been the Administrator's consistent position that after its entry the Settlement became the operative document. As such, the Settlement (similar in nature in this respect to a consent decree[3]), is "an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees." *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 378, (1992). "[A]lthough [it is] a contract between parties, a consent decree's enforcement is entirely dependent upon judicial act." *Turtle Island Restoration Network v. U.S. Dept. of Commerce*, 834 F. Supp. 2d 1004, 1011 (D. Hawaii, 2011) (Holding that a federal defendant agency did not have to follow several federal environmental statutes in order to comply with a consent decree); *see also EEOC v. C.W. Transp. Inc.,* 658 F. Supp. 1278, 1301 (D. Wisconsin, 1987) (citing *Local number 93,* 106 S. Ct. at 3076 stating that "it is the agreement of the parties, rather than the force of the law upon which the complaint was originally based, that creates the obligations embodied in a consent decree"). Accordingly, "the statutes and regulations relied upon by [Indulac] do not contemplate their applicability to consent decrees." *Id*. Indulac's main argument is that non-compliance with Puerto Rico laws invalidates the June 2017 Price Order. Yet,

---

[3] *American Disability Ass'n Inc. v. Chmielarz,* 289 F.3d 1315, 1319 n.2, 1321 (11th Cir. 2002) ("[T]he district court's explicit. . .retention of jurisdiction to enforce [the] terms [of the settlement agreement is] the functional equivalent of a consent decree...The formal entry of a consent decree was wholly unnecessary . . . . Rather, by approving the settlement agreement and then expressly retaining jurisdiction to enforce its terms, the district court effected precisely the same result as would have been achieved pursuant to a consent decree.")

federal judicial authorities state otherwise.  "Because a consent decree is a 'judicial act'[4] rather than an agency act, Federal Defendants are not required to ensure that their stipulation to the proposed consent decree complies with th[is] statute[ ]." *Id. See also Home Builders Association of Northern California v. Norton*, 293 F. Supp. 2d 1, 5 (D.D.C. 2002) ("As such, the Court does not find that the notice and comment requirements of 5 U.S.C. § 553 apply before the Court's adoption of a consent decree, as adoption of a consent decree is not an agency act under the [Administrative Procedures Act (APA)].").

Sections 2.1 and 2.2 of the Puerto Rico Uniform Administrative Act (LPAU under its Spanish language acronym) requires public notice and comment from Puerto Rico executive branch agencies in enacting their regulations.  P.R. Laws Ann., tit. 3, §§ 2121, 2122.  The LPAU also provides for judicial review remedies when agencies do not

---

[4] Settlement agreements have been interpreted as judicial acts when the court retains jurisdiction to enforce them:

> **By retaining jurisdiction to enforce the settlement agreement, the agreement is more than a contract between the parties – it becomes a judicial act**. *United States v. Swift & Co.,* 286 U.S. 106, 115, 52 S. Ct. 460, 76 L. Ed. 999 (1932) ("We reject the argument for the interveners that a decree entered upon consent is to be treated as a contract and not as a judicial act.").  As such, the Court agrees with Plaintiff that the settlement agreement should be viewed as a consent decree, not merely as a settlement contract without any judicial imprimatur.  As the Eleventh Circuit has stated, where a court has retained jurisdiction to enforce a settlement agreement in an order dismissing a case, **"[T]he district court's explicit. . . retention of jurisdiction to enforce [the] terms [of the settlement agreement is] the functional equivalent of a consent decree . . . The formal entry of a consent decree was wholly unnecessary . . . . Rather, by approving the settlement agreement and then expressly retaining jurisdiction to enforce its terms, the district court effected precisely the same result as would have been achieved pursuant to a consent decree."** *American Disability Ass'n Inc. v. Chmielarz,* 289 F.3d 1315, 1319 n.2, 1321 (11th Cir. 2002).

*Access for the Disabled Inc. v. Leder,* 2008 U.S. Dist. LEXIS 29418, * 4- *5 (2008) (emphasis added).

*Industria Lechera de Puerto Rico, Inc., v. Secretary of Agriculture.*
**Motion tor Dismiss**
10

substantially comply with the notice and comment requirements. *Id*., § 2127; *Centro Médico del Turabo Inc. v. Departamento de Salud,* 181 D.P.R. 72, 80 (2011). Act 34 also requires public notice and comment in the price review process. P.R. Laws Ann., tit. 5, § 1107. Similarly, "[t]he APA provides, inter alia, that federal agencies must follow certain procedures, such as providing for public notice and comment before "rulemaking." 5. U.S.C. § 553(b). For the purposes of the statute, amending or repealing a rule requires recommencing the rulemaking process." *Id.* However, "a consent decree is a judicial act, rather than an agency act. *See Norton,* 293 F. Supp. 2d at 5 ("As such, the Court does not find that the notice and comment requirements of 5 U.S.C. § 553 apply before the Court's adoption of a consent decree, as adoption of a consent decree is not an agency act under the APA."); *Citizens for a Better Env't v. Gorsuch,* 718 F.2d 1117, 1136, 231 U.S. App. D.C. 79 (D.C. Cir. 1983) (Wilkey, J., dissenting) ("This court has previously ruled that the consent decree at issue here does not rise to the level of a rulemaking."); *Id.* ("The commitment that occurs through a consent decree takes place, however, without recourse to the public notice requirements of notice and comment rulemaking.").

Logic dictates that if the APA "is not applicable to [a] proposed consent decree," then Act 34 nor LPAU notice and comment requirements are inapplicable[5] as well to the enactment of the June 2017 Price Order because it is a judicial, rather than an agency act, which was done in compliance with the Settlement. Therefore, since the Administrator was complying with the Settlement, she did not have to comply with notice and comment

---

[5] The Puerto Rico Supreme Court has adopted a rule in the interpretation of Puerto Rico's Uniform Administrative Proceedings Act in that the "interpretative jurisprudence of the APA and other state statutes based on the Model Code…are very persuasive authorities to interpret [Puerto Rico's Uniform Administrative Proceedings Act]." *See Asociación de Farmacias de la Comunidad v. Departamento de Salud*, 156 D.P.R. 105, 132 (2002) (Our Translation).

requirements of Puerto Rico Administrative laws. *Turtle Island Rest. Network v. United States DOC,* 834 F. Supp. 2d 1004, 1013 (2011).

### C. The June 2017 Price Order does not substantively change prior regulatory accrual sur-charge orders, nor does it establish new law, rights or duties.

The June 2017 Price Order only extends a regulatory accrual sur-charge adopted in 2008, in vigor henceforth until the Settlement, deferred per agreement for a period of time and re-established once the period tolled as set forth in the Settlement. Thus, notice and comment are not required under such circumstances given that the June 2017 Price Order does not provide for "substantive change" to the regulatory accrual sur-charge since it was enacted in 2008. The June 2017 Price Order does not establish "new law, rights or duties" with regards to the regulatory accrual sur-charge. *SBC, Inc., v. FCC*, 414 F. 3d 486, 487-98 (3rd Cir. 2005) ("Legislative rules are subject to notice and comment requirements of the APA because they work substantive changes in prior regulations, or create new law, rights or duties.")

Since there is no substantive change to prior price orders, nor does the June 2017 Price Order create new law, rights or duties, Indulac's rights and interests are not substantially affected. The District Court should note that the regulatory accrual sur-charge is an "add-on" to the price of fluid milk. The current price of fluid milk provides adequate compensation to the plants considering their costs and a reasonable rate or return. Specifically, Indulac will continue to enjoy the coverage of its recognized costs and a 16.2% rate of return.

### D. *The June 2017 Price Order Reiterates Prior Price Orders.*

Notice and comment are also unnecessary when there is reiteration of a prior adopted rule. It has been stated more than once in this motion that the June 2017 Price Order simply reestablishes the regulatory sur-charge on all fluid milk which was deferred by virtue of the Settlement. It cannot be said that a "virtual 'reprinting of the statutory language,' in the regulation [affects a party's] rights and interests." *Rochna v. National Transp. Safety Bd.,* 929 F.2d 13, 14 (1991). This is true because "when regulations merely restate the statute they implement, notice-and-comment procedures are unnecessary." *Gray Panthers Advocacy Committee v. Sullivan*, 936 F.2d 1284, 1291 (1991). By enacting the June 2017 Price Order, the Administrator merely restated what was disposed of in prior price orders, particularly the April 2008 Price Order which established the regulatory accrual sur-charge on all fluid milk and in compliance with the Judgment and Settlement.

### E. *The Administrator is entitled to the application of Latches.*

It is axiomatic that "[e]quity aids the vigilant, not those who slumber on their rights." Federal Practice and Procedure, §2946 at p. 113; *See also Pastor-Glnorio v. R&G Mortgage Corp.*, 371 F. Supp. 2d 89, 97 (D.P.R. 2005) (18 month delay in bringing federal suit was unreasonable).

The doctrine of *laches* bars assertion of a claim where a party's delay in bringing a suit was (1) unreasonable, and (2) resulted in prejudice to the opposing party in defending the claims. *K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 911 (1st Cir. 1989), Federal Practice and Procedure, at 113. *See also Pastor-Glnorio,* 371 F. Supp. 2d at 97 and compare *Tenoco Oil Co. Inc., v. Department of Consumer Affairs*, 876 F. 2d

1013, 1017-18 (1st Cir. 1989)[6] and *Lingle v. Chevron U.S.A., Inc.*, 125 S.Ct. 2074, 161 L. Ed. 2d 876, 884 (2005)[7]. When the timing is not controlled by a statutory limitation period, the burden rests with the defendant to establish both unreasonable delay and substantial prejudice. *See K-Mart*, 875 F.2d at 911. The question of when delay becomes unreasonable is not simply a question of time but of context, the nature of the underlying claim, the opportunity to bring it earlier, and the reasons for the delay. *See Kay v. Austin*, 621 F.2d 809 (6th Cir. 1980); *Miller v. Board of Commissioners of Miller County*, 45 F. Supp. 2d at 1373 (M.D.Ga. 1998).

It is uncontested that Indulac did not challenge the adoption of the regulatory accrual sur-charge at any time between April 2008, although it was afforded ample opportunity do so. That is, Indulac in that 5-year period did nothing to challenge the regulatory accrual sur-charge. In fact, during the totality of that 5-year period, Indulac collected and paid the regulatory accrual sur-charge to the Administrator for payment to the plants. It is also uncontested that the regulatory accrual sur-charge was imbedded in the price of all fluid milk sold in Puerto Rico. It is equally true that Indulac had knowledge of the content of the Settlement and, in particular, paragraph thirteen thereof. Indulac was provided the opportunity to and in fact challenged the Settlement at the District Court level and was unsuccessful in its efforts. Its efforts ended with the dismissal of its appeal. The regulatory accrual sur-charge reinstated by the June 2017 Price Order upon all fluid milk contains "no new information which [Indulac] had not

---

[6] Although the injunction was vacated by the First Circuit for failure to abide by *Williamson*, supra., plaintiffs there did not hesitate to take their action to federal court on a takings claim upon issuance of the challenged price order.

[7] Action was brought to federal court seeking injunctive and declaratory relief within 30 days after the enactment of the challenged legislation was enacted.

already been aware of [by 2008]"; "it was inferable then" that the regulatory accrual surcharge would take effect by January 2017. *Puerto Rican-American Ins. Co. v. Benjamin Shipping Co.,* 829 F.2d 281, 283 (1st Cir. 1987). These facts clearly point to latches[8].

## IV.
## CONCLUSION

The District Court can dismiss the Removed Action for a number of reasons for failure to state a claim which were set forth in the Motion for Injunctive Relief. The District Court may also dismiss the Removed Action for failure to state a claim because the only authority that the Administrator had to obey when placing the June 2017 Price Order in vigor was the Settlement.

**WHEREFORE**, the Administrator respectfully requests that this Honorable Court DISMISS the Removed Action for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6).

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 12th day of July, 2017.

**WE HEREBY CERTIFY** that of this date a true and exact copy of this motion has also been electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record registered in the use of the CM/ECF system.

---

[8] The District Court keenly identified latches in the March 22, 2017, Contempt Hearing. CHT March 22, 2017, p. 24, l. l. 8-9.

*Attorney for the Defendants*
**THE LAW OFFICES OF
EDWARD W. HILL**
P.M.B 248
La Cumbre, 273 Sierra Morena
San Juan, P.R. 00926
Tel.:    (787) 294-0033
Fax:    (787) 294-8804


By:   s/ Edward W. Hill
Edward W. Hill
USDC-PR No. 213614