IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **INDUSTRIA LECHERA DE PUERTO RICO INC.,**<br><br>Plaintiff<br><br>v.<br><br>**CARLOS FLORES, in his official Capacity as SECRETARY OF THE PUERTO RICO DEPARTMENT OF AGRICULTURE; MARIA DEL CARMEN MARTINEZ CAMPOS, in his official capacity as, INTERIM ADMINISTRATOR OF THE PUERTO RICO MILK INDUSTRY REGULATORY OFFICE**<br><br>Defendant | CIVIL NO: 17-1885 |

## MOTION TO DIMISS AND/OR FOR SUMMARY JUDGMENT AGAINST INDULAC'S CLAIMS [1]

**TO THE HONORABLE COURT:**

  **COMES NOW INTERESTED ENTITY, SUIZA DAIRY, CORPORATION ("Suiza")** through its undersigned attorneys and very respectfully alleges and prays as follows:

### I. INTRODUCTION

  This Honorable Court, guaranteeing a due process of law to Industria Lechera de Puerto Rico, Inc. ("Indulac") as an intervenor, rendered a Judgment four years ago (in case 04-1840) that turns Indulac's instant claims into frivolous litigation ("the Judgment"). That Judgment was affirmed by the Court of Appeals for the First Circuit in *Vaquería Tres Monjitas, Inc., v. Comas*

---

[1] The instant motion should be considered as Suiza's pleading in this case and it is submitted in accordance to Rule 24(c) of Civil Procedure.

*Pagán*, 772 F.3d 956, 960 (1ˢᵗ Cir 2014), against an appeal by Indulac itself. Price Order 17-16 ("PO 17-16"), which is now being impeached by Indulac, is no surprise to said party. The same was enacted in compliance and as a direct result of the Judgment.² The legality of the Agreement that is contained in the Judgment was properly litigated by Indulac. What is more, its content including the regulatory accrual is consistent with prior Price Orders that were issued by ORIL starting in April of 2008, which had been partially obeyed by Indulac. This case is an unfounded and meritless attempt to boycott the Judgment. Dismissal is in order and enforcement of the Judgment must be made by this Honorable Court.

## II.   ARGUMENTS

### A. STANDARD OF REVIEW

Rule 12 (b)(6) states that a claim can be dismissed if Plaintiff: "fail[s] to state a claim upon which relief can be granted". This District Court has broadly discussed the scenario of a motion to dismiss under Rule 12(b)(6). Specifically, it has stated that when evaluating a motion to dismiss under said Rule its "role is to examine the complaint to determine whether plaintiff has adduced sufficient facts to state a cognizable cause of action." *Rosario v. United States*, 538 F. Supp. 2d 480, 487 (D.P.R. 2008).

This District Court has ruled on the dynamics of a motion to dismiss under Rule 12 (b)(6). It has said that:

> "To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "a plausible entitlement to relief." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 559 (2007). However, a court should "accept well-pled factual allegations in the complaint as true and make all reasonable inferences in the plaintiff's favor." *Miss. Pub. Emps.' Ret. Sys. v. Boston Scientific Corp.,* 523 F.3d 75, 85 (1st Cir.2008). While a complaint need not contain detailed factual allegations in order to withstand dismissal, **a plaintiff's**

---

² In fact, it was discussed during the contempt hearing held in case 08-2191 on March 22, 2017. Indulac is an intervenor in that case.

> **"obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do**." *Twombly,,* 550 U.S. at 555 (internal citation omitted). **The court need not accept as true legal conclusions or " 'naked assertions' devoid of 'further factual enhancement**.' " *Ashcroft v. Iqbal,,* 556 U.S. 662, 678 (2009) (quoting *Twombly,,* 550 U.S. at 557) (internal alteration omitted); *Maldonado v. Fontanes,* 568 F.3d 263, 267 (1st Cir.2009). **The complaint must allege enough factual content to nudge a claim across the line from conceivable to plausible**. *Iqbal,* 556 U.S. at 680." *US v. Molina,* 2014 WL 3747544 (D.P.R. 2014). (Emphasis added).

As to the scope of the matters the court can review in order to decide a motion to dismiss, the First Circuit has ruled that courts are not necessarily limited to the pleadings of a complaint. Specifically, it has stated that:

> "Ordinarily, of course, any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden, unless the proceeding is properly converted into one for summary judgment under Rule 56. *See* Fed.R.Civ.P. 12(b)(6). However, **courts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.** *See, e.g.,* \*4 *Romani v. Shearson Lehman Hutton,* 929 F.2d 875, 879 n. 3 (1st Cir.1991) (considering offering documents submitted by defendants with motion to dismiss claim of securities fraud); *Fudge v. Penthouse Int'l, Ltd.,* 840 F.2d 1012, 1014–15 (1st Cir.) (considering allegedly libelous article submitted by defendants with motion to dismiss), *cert. denied,* 488 U.S. 821, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988); *Mack v. South Bay Beer Distrib., Inc.,* 798 F.2d 1279, 1282 (9th Cir.1986) ("**[O]n a motion to dismiss a court may properly look beyond the complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion to one for summary judgment**."); *see also In re Wade,* 969 F.2d 241, 249 & n. 12 (7th Cir.1992). (**Emphasis ours**) *Watterson v. Page*, 987 F.2d 1, 3–4 (1st Cir. 1993)

The issue as to the consideration of documents which are not contained in the pleadings *per se* when deciding on a motion to dismiss has been specifically discussed by federal courts. In the case of *Watterson, supra*, the Court stated that:

> "[T]he problem that arises when a court reviews statements extraneous to a complaint generally is the **lack of notice to the plaintiff**.... **Where plaintiff has actual notice ... and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.**"), *cert. denied,* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992); *Berk v. Ascott Inv. Corp.,* 759 F.Supp. 245, 249 (E.D.Pa.1991) ( **"[W]hen a plaintiff has admitted the authenticity of a document ..., a court may consider that document** in ruling on a motion under Fed.R.Civ.P. 12(b)(6)."). (Emphasis of ours) *Id.,* at p. 4

In this case Indulac's pleadings, even considered as true, simply do not advance a valid cause of action upon which relief can be granted. This conclusion arises from an evaluation of our arguments in support of dismissal, as well as those raised by ORIL at Dkt. 14, based on Indulac's own pleadings. In addition to those, below we refer to the facts raised by ORIL in its Motion to Dismiss (Dkt. 14) and further clarify some of those. We respectfully sustain that all of these facts are related to the pleadings in this case and/or are sustained in public documents and legal judgments as to which no authenticity issue can arise. Indulac is aware of all of these documents, since they are part of the record of the instant case, case 04-1840 or 08-2191. The latter are mentioned in Indulac's pleadings as well.

However, should this Honorable Court consider that this motion to dismiss should be treated as a motion for summary judgment; dismissal of the complaint is in order as well. A party is entitled to summary judgment when there is no genuine issue of material fact on the record and that party is entitled to summary judgment as a matter of law. *Murray v. Warren Pumps, LLC*, 821 F.3d 77, 83 (1st Cir. 2016); see Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if it can be resolved in favor of either party, and a fact is material if it has the potential of affecting the outcome of the case." *Xiaoyan Tang v. Citizens Bank, N.A.,* 821 F.3d 206, 215 (1st Cir. 2016) (internal quotation marks omitted).

To defeat a properly supported motion for summary judgment, the non-moving party must set forth facts showing that there is a genuine dispute for trial. *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London,* 637 F.3d 53, 56 (1st Cir. 2011). In addition, when "the nonmovant has the burden of proof on a critical issue and the evidence that she proffers in opposition to summary judgment is so vague that she could not prevail at trial, the motion must be granted." *Pérez v. Volvo Car Corp.,* 247 F.3d 303, 318 (1st Cir. 2001) (citations omitted). Accordingly, the Court may "afford no evidentiary weight to the conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." *Tropigas de P.R., Inc., supra*, 56.

The facts herein included lack any genuine controversy which might impede this Honorable Court from dismissing this case by way of a summary judgment. In addition, they are properly supported by admissible evidence.

### B. THE FACTS[3]

1. The June 2017 Price Order was issued on May 31, 2017 by the Administrator. **Dkt. #1, Exhibit 1, p. 2, ¶IV-1.**

2. Indulac was notified of the June 2017 Price Order on May 31, 2017. **Id., IV-2.**

3. The June 2017 Price Order increases the price of UHT milk to be paid at the consumer level from $1.92 to $1.95. **Id., ¶IV-3, 6.**

4. The change in price would be effective on June 1, 2017. **Id., ¶IV-4.**

---

[3] Suiza herein relies on most of Oril's facts (as included in pages 3-7 of Dkt. 14) with some clarifications. Indulac has raised an argument as to the standard of review this Honorable Court should follow when evaluating Oril's Motion to Dimiss (Dkt. 21). Indulac states that, since the Motion to Dismiss contains facts that supposedly do not relate to the pleadings, Oril's motion should be considered as a summary judgment and that some of the facts are not properly sustained in admissible evidence. We sustain that Oril's motion complies with Rule 12(b)(6) and the case law that applies to said Rule, but herein further clarify some facts.

5. The June 2017 Price Order does not advise an adversely affected party of their right to request judicial review or that such review could be filed in the Court of First Instance. **Id., ¶IV-5.**

6. The June 2017 Price Order increased the price of UHT milk without holding public hearings duly notified, without the appearance and recommendation of the Secretary of the Department of Consumer Affairs and did not rely on a market study as required by Act 34. **Id., ¶IV-7.**

7. Indulac sent a letter to the Administrator claiming that the June 2017 Price Order was illegal and ultra vires. **Id., ¶IV-8.**

8. The District Court issued a Preliminary Injunction through which it ordered the Administrator to, inter alia, "adopt a temporary mechanism that will allow [respondents] to recover the new rate of return… for the year 2003…and up to the day when they begin to recover said rate." *Vaqueria Tres Monjitas, Inc., v. Laboy*, 2007 LEXIS 98950, p. 181. With regards to such remedy, the court provided that "[t]he Administrator may so act through regulatory accruals, special temporary rates of return or any other available mechanism of [the Administrator's] choosing." **See Dkt. 480 in case 04-1840 and Dkt. 11-1, at p. 16 wherein Indulac makes specific reference to the Preliminary Injunction in case 04-1840**.

9. In compliance with the District Court's order, the Administrator of ORIL promulgated a Price Order dated April 17, 2008 (the April 2008 Price Order). The promulgation of the April 2008 Price Order followed the required processes under Puerto Rico law. The April 2008 Price Order provided for a regulatory accrual sur-charge **over every quart of fluid milk sold in Puerto Rico, and was imbedded in the price of the products sold to the consumer for**

6

**the purpose of compensating respondents for their lost revenues**. See Dkt. 11-1 at p. 45-52.

10. Defendants informed the District Court of the adoption of the April 2008 Price Order, which originally provided for the regulatory accrual sur-charge imbedded in the price of all fluid milk sold in Puerto Rico at the consumer level. **See Dkt. 846 and Dkt. 850 in case 04-1840. Also, see Dkt. 11-1 at p. 45-54.**

11. The District Court in case 04-1840 provided the parties with an opportunity to challenge the April 2008 Price Order. **See Dkt. 833 in case 04-1840**. Six challenges were filed. **See Dkts. 858 in case 04-1840** (PRDFA's Challenge), **Dkt. 859 in case 04-1840** (VTM's Challenge), **Dkt. 861 in case 04-1840** (Suiza's Challenge), **Dkt. 862 in case 04-1840** (Indulac's Challenge), **Dkt. 863 in case 04-1840** (CUD's Challenge) and **Dkt. 865 in case 04-1840** (Ganaderos Unidos' Challenge). [4]

12. **Indulac did not challenge the regulatory accrual sur-charge implemented via the April 2008 Price Order in case 04-1840**. See Dkt. 862 in case 04-1840. [5]

13. The only challenge brought by Indulac to the April 2008 Price Order was against the "balancing plant credit," which was challenged as having "the precise opposite of what the credit intends to achieve." **See Dkt. 862 in case 04-1840, p. 2**. [6]

14. The District Court acknowledged on more than one occasion that the regulatory accrual sur-charge was an effort to comply with the preliminary injunction, and even the Court of Appeals noted that "[i]n compliance with the district court's injunctive order, ORIL adopted an administrative order which directed that 1.5 cents from the sale of each quart of milk be

---

[4] Also, see Dkt. 11-1 at p. 16-17 and note 8, in which reference is made to the April 2008 Price Order and its Supplementary Memorandum.
[5] Refer to note 4.
[6] Refer to note 4.

earmarked for the purpose of complying with the regulatory accrual mechanism." **See Vaqueria Tres Monjitas v. Irizarry, 600 F. 3d 1, 2 (1st Cir. 2010).** [7]

15. The regulatory accrual sur-charge continued in full force through the several Price Orders issued thereafter while the case was litigated.  **See Dkt. 1438-2 in case 04-1840; Dkt. 1814-1, p. 63-64 in case 04-1840 and Dkt. 1-4, p. 85-88**.

16. On October 29, 2013, Defendants, Secretary of Agriculture of Puerto Rico (the Secretary) and the Administrator, together with Plaintiffs, Suiza Dairy, Inc. (Suiza), and Vaquería Tres Monjitas, Inc. (VTM), executed the Settlement thereby "settl[ing] all matters pending in the [] action in the interest of justice. . ." **See Dkt. 1-4, p. 43-97.**

17. The District Court approved the Settlement and incorporated its terms into an Order and Judgment. **See Dkt. 2334 in case 04-1840 and Dkt. 11-1, p. 19 in which reference is made by Indulac to the Settlement Agreement.**

18. After the parties settled the case and prior to Judgment, the District Court afforded PRDFA and Indulac the opportunity to challenge the Settlement. Both intervenors filed motions challenging the Settlement. Indulac moved the District Court to alter and/or amend the Judgment. **See Dkt. 2409 in case 04-1840**. Thus, a second opportunity was afforded to Indulac to challenge the regulatory accrual sur-charge. Indulac then challenged the regulatory accrual and its payout. **Id., p. 11** ("…ORIL pretends to shift a significant portion of the burden of the illegally agreed regulatory accrual amount to [Indulac]."). Clearly, Indulac understood the ramifications of the Settlement that would become a Judgment, particularly with regards to the application of the regulatory accrual sur-charge to all fluid milk. The District Court denied Indulac's motion to alter or amend. An appeal was filed by Indulac, but

---

[7] Also, please note that Indulac's pleadings make specific reference to case 04-1840 and 08-2191.  Therefore, matters related to those are considered as part of Indulac's pleadings. **See Dkt 11-1, p. 18, n. 8.**

dismissed by the Court of Appeals as untimely. *Vaquería Tres Monjitas, Inc., v. Comas Pagán*, 772 F.3d at 960.

19. The Settlement contains a number of agreements related to the regulatory accrual. **See Dkt. 1-4, 45-47 ¶¶8, 9, 10, 11, 12, 13, and 14.**

21. Pursuant to the Settlement, the regulatory accrual sur-charge "w[ould] be deferred" between November 7, 2013 and December 31, 2016, and reinstated by January 1, 2017. **Dkt. 1-4, p. 48, ¶13**.

22. In the context of paragraph thirteen of the Settlement, the deferment referred to the act of collecting the regulatory accrual sur-charge on all fluid milk for a period of time set forth in the Settlement. . **Dkt. 1-4, p. 48, ¶13**.

23. The Settlement included a Price Order pre-dated November 7, 2013 (the November 2013 Price Order), which contained a regulatory accrual of 0.001 per quart over all fluid milk. **See Dkt. 1-4, p. 85-88.**

24. The October 23, 2014 Price Order included a regulatory accrual of 0.001 per quart over all fluid milk. **See Exhibit 1, AO 2014-28.**

25. By Price Order 2016-25 dated December 26, 2016 (the December 2016 Price Order), the Administrator without the need for any administrative proceeding, informed all parties in the milk industry of the scheduled increase of 3 cents over fresh milk effective January 1st, 2017, which included the regulatory accrual surcharge at 3.1 cents per quart. **See Dkt. 11-1, p. 42.**

26. The 3 cents increase in the price of fresh and UHT milk was made extensive to UHT milk through the now challenged June 2017 Price Order, which informed all participants in the industry of the scheduled increase of 3 cents over fresh and UHT milk effective June 1st, 2017, which included the regulatory accrual surcharge at 3.1 cents per quart. **See Dkt. 11-1,**

**p. 29-33.** The regulatory accrual was to increase automatically as of January 1st, 2017 according to Price Order 2014-28. **See Exhibit 1, AO 2014-28 and Dkt. 1-4, P. 87.**

28. The June 2017 Price Order only reestablished Indulac's margin on UHT milk by increasing the price of UHT milk in 3 cents to offset the automatical adjustment of the regulatory accrual surcharge upon all fluid milk, which had been in place five years prior to a settlement of a federal claim and was differed for three years pursuant thereto. **See Dkt. 11-1, p. 29-33.**

### C. ARGUMENTS

1. **The content and effect of Price Order 17-16 is no surprise to Indulac. The same is a direct result of a Judgment in case 04-1840 in which Indulac was an Intervenor.**

After the Preliminary Injunction in Civil Case 04-1840, ORIL included a regulatory accrual charge in the price of fresh <u>and UHT milk</u>. Indulac began to collect regulatory accrual in April 2008, when ORIL set the regulatory accrual collection to $0.0125 per quart of fluid milk

Indulac has partially obeyed the Price Orders and continued to collect the regulatory accrual up through the Judgment, at which point it was collecting $0.015 per quart of fluid milk. Indulac has <u>partially obeyed</u> because it has collected the regulatory accrual on behalf of Suiza Dairy <u>but it has not remitted the collected monies, which remain in Indulac's coffers</u>. This has been happening since April 2008. FEP, Inc. and other parties in the industry that trade, barter, commercialize and sell UHT milk have also been collecting regulatory accrual on behalf of Suiza and have not yet transferred the monies collected either.

The price order issued by ORIL incorporating the stipulations of the Judgment raised the regulatory accrual collection to $0.031 per quart of fluid milk, but the fresh milk plants accepted

to defer $0.03 per quart of that collection until January 1, 2017 (**Dkt. 1-4, p.46**). The deferral had an expiration date of December 31, 2016 (**See Dkt. 1-4, p. 46 ¶13**).

From the time of the Judgment until December 31, 2016, Indulac, FEP Inc., distributors and importers had been collecting $0.001 per quart <u>of fluid milk</u> for the regulatory accrual on behalf of the fresh milk plants in compliance with the Judgment (although, as previously stated, Suizas has not received those funds). On January 1, 2017, the deferral of $0.03 per quart ended, and the regulatory accrual collection automatically increased to $0.031 per quart of all fluid milk. This was made in compliance with the Judgment to cover the automatic adjustment in the regulatory accrual and not to reduce the fresh milk plants' margin. On June 1, 2017, ORIL issued a price order increasing the price of UHT milk by 3 cents per quart in compliance with the Judgment to cover the automatic adjustment in the regulatory accrual and not to reduce Indulac's margin.

These matters were discussed during the compliance hearing held on March 22, 2017 in the case of *PRDFA v. Comas*, 08-2191. A case in which Indulac is an Intervenor. Therein, ORIL asked for two weeks to establish the regulatory accrual now being questioned by Indulac. Specifically, the following was broadly discussed:

> "[Mr. Escalera:] Nothing of this is new to the Court. You know that the reasons for the difference between the price to the consumer of UHT and fresh milk, you know that first it was 1 cent, then it went up to 1.5, then it went up to $0.03 that were part of the regulatory accrual collected on all fluid milk. That all went off with the judgment. It said it will come up again in January of 2017. So we want it to come up again, and we want the money that has been collected for regulatory accrual that has not been paid to us. That's all we want. That's all we want.
>
> […]
>
> So all I want is what the judgment says. It says $0.03 for regulatory accrual beginning in January. It was increased to fresh

> milk. It wasn't increased to UHT. I want it increased to UHT, and I want an accounting of how much of that money is actually owed because not one cent has been paid. That's it.
>
> THE COURT: January to January.
>
> MR. ESCALERA: No, no, no, not only January. Since the first cent that was collected back in 2011 before the judgment to 2017, there have been three different account -- three different numbers: 1 cent, 1.5, and 3, in different periods. So we need an accounting what the period was for 1 cent, what the period was for 1.5, what the period was for 3. Whatever way we agree that it's going to be paid, it's an agreement. And I think the administrator has agreed to do that in a period of two weeks. And that's fine."

As previously stated, Indulac is very much aware of the above. It even argued during that hearing, as this Honorable Judge might recall. But Indulac is not only aware, but in contempt of the Judgment. Although it has collected the regulatory accrual in question, it has not made <u>any</u> payments to Suiza related to that concept.

By means of this case Indulac simply tries to deviate the legal and correct course of actions taken by ORIL, while it ignores its legal obligations as part of the regulatory market in which it conducts business. The relief sought by Indulac is based on frivolous averments and do not constitute a valid claim subject to this Honorable Court's consideration. Furthermore, enforcement of the Judgment should be ordered by this Honorable Court. Indulac has to pay all the moneys it has collected related to the regulatory accrual as to which it has knowledge and has collected moneys since 2008.

### 2. PO 17-16 complies with the Judgment. There is no legal basis for Indulac's arguments as to the need of a regulatory process prior to the enactment of PO 17-16

Indulac claims that the process contained in Law 34 and the Uniform Administrative Proceedings Act ("LPAU") for the establishment of a price order had to be followed prior to the enactment of Price Order 17-16. In support of that position, it cites case law that is

distinguishable from the facts that pertain this case. None of the cases cited by Indulac in its motion are related to a regulation that is issued in compliance with a federal Judgment affirmed by the First Circuit against Indulac's appeal, firm and final. Thus, they are irrelevant.

In addition to the above, we should highlight the fact that a regulatory process was not followed either when Price Order 16-25 was implemented. **See Dkt. 11-1, p. 42** It was not followed, because it is not needed. Nevertheless, Indulac never raised a similar issue then. [8]

What's important in this case is that Price Order 17-16 was enacted based, literally, on the content of a Judgment. Therein it is stated that: "[w]hen the new Oril Price Order, Exhibit 2, enters into effect on November 7, 2013, 3 cents out of regulatory accrual charge to pay out the principal as of 2028, will be deferred until January 1, 2017." **See Dkt. 1-4 P. 48.**

Based on the above, in order to enact and enforce PO 17-16 there is no need for a market study for the determination of a price. There is no need for notice. There is no need for the Department of Consumers Affairs to be present during a public hearing nor a report form said agency with recommendations. There is no need for publication. There is no need to do any of that, because what had already been decided in a final and firm Judgment is not subject to such process. Simply put, the supremacy clause of the US Constitution displaces any territorial action inconsistent with a federal mandate. See U.S.C.A. Const. Art. 6, cl. 2.

As ORIL very well stated, the Administrator's consistent position as to the price orders it issues is that after the Judgment (which incorporated the Settlement Agreement) was entered, it became the operative document of the agency. It cannot be any other way. ORIL has to follow a Judgment which contained a consent decree. Otherwise it is incumbent upon the court to force compliance. The contents of PO 2017-16 are faithful to the obligations which ORIL committed by means of the consent decree and therefore, to the Judgment.

---

[8] As to this particular reality, we join ORIL's latches argument, as included at Dkt. 14, p. 13-15.

This Honorable Court should enforce its Judgment, dismiss this case and order Indulac to pay to Suiza all the moneys it owes which relate to the regulatory accrual that has been part of ORIL's Price Orders since 2008 (not less than $2.5 million of dollars). The Federal Court of Appeals for the First Circuit has recognized that:

> "[t]he entry of a consent decree does not "kill" a case or terminate a district court's jurisdiction. Rather, when, as now, an injunction entered pursuant to a consent decree has ongoing effects, **the issuing court retains authority to enforce it.** See, e.g., System Fed'n No. 91, Etc. v. Wright, 364 U.S. 642, 647, 81 S.Ct. 368, 371, 5 L.Ed.2d 349 (1961) (explaining that structural injunctions "often require[ ] continuing supervision by the issuing court **and always a continuing willingness to apply its powers and processes on behalf of the party who obtained th[e] equitable relief**"). . . . This authority is part of a court's inherent powers and exists regardless of whether a particular consent decree expressly so provides.5 See Swift, 286 U.S. at 114, 52 S.Ct. at 462; see also Fed.R.Civ.P. 60(b)(5)–(6)." (Emphasis of ours) *In re Pearson*, 990 F.2d 653, 658 (1st Cir. 1993)

Indulac's claims are nothing but a challenge to a final and firm Judgment issued by this Honorable Court. Therefore, this Honorable Court should apply its powers to impede that Indulac continues to ignore its rulings.

In the case of *In Re Pearson* the Court ruled that: "[a] consent decree is not simply a contract entered into between private parties seeking to effectuate parochial concerns. […] The court stands behind the decree, ready to interpret and **enforce its provisions**." (Emphasis of ours) *Id.* The basis for the issuance of PO 17-16 is not in any way different from what was contemplated at the time the Judgment was entered. Therefore, no further interpretation must be given to the Judgment, rather its provisions should be enforced and this case dismissed. Indulac has to obey a final and firm judgment. Indulac has to obey ORIL's PO 2017-16 and has to pay Suiza the regulatory accrual it has collected since 2008.

### III. CONCLUSION

Indulac's claims do not find support on its very own pleadings. PO 17-16 was enacted in conformity with this Honorable Court's final and firm Judgment. There is no need for any further legal formality prior to the confirmation of the information contained in PO 17-16. Indulac continues to try to re litigate a matter that has already been even confirmed by the First Circuit Court. While acting this way, it continues to collect the regulatory accrual as to which it has had knowledge since 2008 but does not pay Suiza the money collected in such way. Dismissal is in order and enforcement of the Judgment imminent in order for Suiza to be able to collect the moneys as to which it has a right.

**WHEREFORE**, it is requested from this Honorable Court that Idulac's complaint is dismissed and enforcement of the Judgment as herein discussed immediately ordered.

**RESPECTFULLY SUBMITTED.**

I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of the record.

In San Juan, Puerto Rico, this July 24th, 2017.

**REICHARD & ESCALERA**
MCS Plaza, Piso 10
255 Ave. Ponce de León
Hato Rey, PR 00918
P.O. Box 364148
San Juan, PR 00936-4148
Tel: (787) 777-8888/777-8812
Fax: (787) 765-4225

s/**RAFAEL ESCALERA-RODRÍGUEZ**
escalera@reichardescalera.com
U.S.D.C.-PR No. 122,609

s/**VIVIANA BERRÍOS-GONZÁLEZ**
berrios@reichardescalera.com
U.S.D.C.-PR No. 225,710

15