**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

|  |  |
|---|---|
| **INDUSTRIA LECHERA DE PUERTO RICO, INC.,**<br><br>*Plaintiff,*<br><br>v.<br><br>**CARLOS FLORES, in his official capacity as SECRETARY OF THE PUERTO RICO DEPARTMENT OF AGRICULTURE, et al.,**<br><br>*Defendants.* | **CIVIL NO. 17-1885 (DRD)** |

**OPINION AND ORDER**

Pending before the Court are Defendant, Agronomist María del Carmen Martínez Campos, the Interim Administrator of the Puerto Rico Milk Industry Regulatory Office's ("ORIL" under its Spanish language acronym) *Motion to Dismiss for Failure to State a Claim* (Docket No. 14), and Defendant, Suiza Dairy Corporation's (hereinafter, "Suiza") *Motion to Dismiss and/or for Summary Judgment Against Indulac's Claims* (Docket No. 23) with Plaintiff, Industria Lechera de Puerto Rico's (hereinafter, "Indulac") respective responses in opposition at Docket Nos. 21 and 35, respectively[1]. For the reasons stated herein, the Court **GRANTS** Defendants, ORIL and Suiza's motions to dismiss.

---

[1] ORIL filed a Reply to Plaintiff's response to motion to dismiss. (Docket No. 30).

# I.   INTRODUCTION

On June 9, 2017, Indulac filed before the Puerto Rico Court of First Instance a Petition for Review, pertaining an Administrative Order issued by ORIL which sets a retail price increase of three cents ($0.03) per quart of the Ultra High Temperature Milk ("UHT") sold in Puerto Rico. *See* Docket No. 10, ¶ 1. Indulac contends that said Administrative Order was issued in violation of the procedure established in Article 16 of Act 34 of June 11, 1957 also known as ORIL's Organic Act, Article 16, P.R. Laws Ann. Tit. 5, § 1107. *Id.* ¶ 2.

According to Indulac, ORIL promulgated the above referenced Administrative Order without meeting the following statutory requirements: "(i) holding a public hearing affording minimal due process guarantees to all relevant parties (including INDULAC, retailers distributors, etc.), (ii) giving adequate notice and publication, (iii) providing for the appearance, report and recommendation of the Secretary of Consumer Affairs of Puerto Rico to defend the interest of Puerto Rico consumers, and (iv) requiring a support study of the milk industry and market detailing the economic and other effects justifying its implementation." *Id.* ¶ 3; *see also* Art. 16 of ORIL's Organic Act, *supra.*

Notwithstanding, ORIL and Suiza contend that the Petition for Review is intrinsically related to settlement agreement reached in civil case *Vaquería Tres Monjitas, Inc., v. Secretary of Agriculture*, 04-cv-1840 (DRD), between Defendants, Secretary of Agriculture, and the Administrator of ORIL with Plaintiffs Suiza Dairy, Inc., and Vaquería Tres Monjitas. *See* 04-cv1840, Docket No. 2322. The District Court approved the Settlement and incorporated the same into a Judgment. *See* 04-cv-1840mDocket No. 2347.

Subsequently, the Settlement Agreement became ORIL's *Regulation No. 12 of the Milk Industry to Establish the Prices of Milk at All Levels*. "The parties agreed that the regulatory accrual sur-charge that 'the plants ha[d] been collecting' would 'be deferred until January 1, 2017.'" Docket No. 1, p. 4. Consequently, in Price Order 2016-25 dated December 26, 2016, the Administrator reestablished the regulatory accrual sur-charge over fresh milk effective January 1, 2017, pursuant to the Settlement Agreement. *Id.* Then, on May 31, 2017, ORIL issued a Price Order (hereinafter, "June 2017 Price Order") which imposed a three-cent ($0.03) increase on the price of UHT milk to be paid at the consumer level from $1.92 to $1.95, and is subject of the instant claim. *See* Docket No. 11-1, pp. 29-33. The June 2017 Price Order was notified to Indulac on May 31, 2017. *Id.* p. 35. The prices detailed therein would be effective from June 1, 2017. *Id.*, pp. 29-33.

However, prior to addressing the merits of said motion, the Court must review the applicable legal foundation.

## II. STANDARD OF REVIEW

### A. *Federal Rule of Civil Procedure 12(b)(6)*

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 555 (2007), a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." *See* <u>Ocasio–Hernandez v. Fortuño–Burset</u>, 640 F.3d 1, 12 (1st Cir.2011) ("in order to 'show' an entitlement to relief a complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the allegations in the

3

complaint are true (even if doubtful in fact).' ") (quoting <u>Twombly</u>, 550 U.S. at 555) (citation omitted). Thus, a plaintiff must, and is now required to, present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). Id. at 570; See e.g. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by <u>Twombly</u>, 550 U.S. 544, and <u>Iqbal</u>, 556 U.S. 662. "Context based" means that a Plaintiff must allege sufficient facts that comply with the basic elements of the cause of action. *See* <u>Iqbal</u>, 556 U.S. at 677–679 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a <u>Bivens</u> claim, leaving the complaint with only conclusory statements). First, the Court must "accept as true all of the allegations contained in a complaint [,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. <u>Iqbal</u>, 556 U.S. at 678. "Yet we need not accept as true legal conclusions from the complaint or 'naked assertion[s]' devoid of 'further factual enhancement.'" <u>Maldonado v. Fontanes</u>, 568 F.3d 263, 268 (1st Cir.2009) (quoting <u>Iqbal</u>, 556 U.S. at 678) (quoting <u>Twombly</u>, 550 U.S. at 557).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." <u>Iqbal</u>, 556 U.S. at 679. This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. <u>Id</u>.

Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." Sánchez v. Pereira–Castillo, 590 F.3d 31, 41 (1st Cir.2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show [n]' 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." Id. at 682 (citing Twombly, 550 U.S. at 567).

The First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" "even if seemingly incredible." Sepúlveda–Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 30 (1st Cir.2010) (citing Twombly, 550 U.S. at 556); Ocasio–Hernández, 640 F.3d at 12 (citing Iqbal, 556 U.S. at 679); See Twombly, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely.") (internal quotation marks omitted); *See* Ocasio–Hernández, 640 F.3d at 12 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955) ("[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'"). Instead, the First Circuit has emphasized that "[t]he make-or-break standard ... is that the combined allegations, taken as true, must state a plausible, [but] not a merely conceivable, case for relief." Sepúlveda–Villarini, 628 F.3d at 29.

However, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss.

Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.1996). Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well. Penalbert–Rosa v. Fortuño–Burset, 631 F.3d 592 (1st Cir.2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." *Id.* at 596; *See* Iqbal, 556 U.S. at 681 ("To be clear, we do not reject [ ] bald allegations on the ground that they are unrealistic or nonsensical.... It is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *See* Mendez Internet Mgmt. Servs. v. Banco Santander de P.R., 621 F.3d 10, 14 (1st Cir.2010) (the Twombly and Iqbal standards require District Courts to "screen[ ] out rhetoric masquerading as litigation."). However, merely parroting the elements of a cause of action is insufficient. Ocasio–Hernández, 640 F.3d at 12 (citing Sánchez v. Pereira–Castillo, 590 F.3d 31, 49 (1st Cir.2009)).

Furthermore, when Courts are called upon to assess a 12(b)(6) motion to dismiss, or a 12(c) motion for judgment on the pleadings, they may not consider any matters outside of the pleadings unless the motion is treated as a motion for summary judgment. Fed.R.Civ.P. 12(d). Should a 12(b)(6) motion, or a 12(c) motion, be converted into a motion for summary judgment, the "parties must be given a reasonable opportunity to present all the material that is pertinent to the [newly converted motion]." *Id.*

> Although we do not "mechanically enforce the requirement of express notice of a district court's intention to convert a Rule 12(b)(6) motion into a motion for summary judgment," we do guard against allowing such a conversion where it would come as a "surprise" or be "unfair" to the party against whom judgment is rendered.

*Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 31 (1st Cir.2000)

(*Chaparro–Febus v. International Longshoremen Ass'n, Local 1575*, 983 F.2d 325, 332 (1st

Cir.1992)).

The First Circuit has been quite thorough in delineating between what matters are

considered a part of the pleadings and what matters are considered to be outside of the

pleadings:

> [I]n reviewing a 12(b)(6) [motion], it is well-established that in reviewing the complaint, we "**may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment.**" *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir.1996) (citing *Watterson v. Page,* 987 F.2d 1, 3–4 (1st Cir.1993) (explaining that the main problem of looking to documents outside the complaint—lack of notice to plaintiff—is dissipated "[w]here plaintiff has actual notice .... and has relied upon these documents in framing the complaint")). "Were the rule otherwise, a plaintiff could maintain a claim .... by excising an isolated statement from a document and importing it into the complaint...." *Id.; see also Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend,* 163 F.3d 449, 454 (7th Cir.1998) ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations"). (Emphasis added).

*Clorox,* 228 F.3d at 32 (cited in approval in *Schatz,* 669 F.3d at 55–56).

The Court finds that the pending motions to dismiss are to be ruled upon as Fed.

R. Civ. P. 12(b)(6) motions, given that its contents include documents relied upon or

incorporated by reference in the complaint, as well as contained in official records i.e.,

civil federal cases 04-cv-1840 (DRD) and 08-cv-2191 (DRD). With the procedural hurdle

out of the way, the Court is to analyze the parties' motions to dismiss and the allegations

therein.

## III. LEGAL ANALYSIS

The genesis of the instant controversy goes back to 2004, when Vaquería Tres Monjitas, Inc. (hereinafter, "Tres Monjitas") and Suiza filed a Complaint against the Secretary of Agriculture and ORIL, captioned *Vaquería Tres Monjitas, Inc. v. Comas Pagán,* civil case number 04-cv-1840 (DRD). Therein, plaintiffs requested injunctive relief and declaratory judgment alleging that ORIL's Regulation No. 1, since 2001, did not permit Tres Monjitas and Suiza to make a reasonable profit in their milk business. They further alleged that ORIL provided Indulac an artificial law subsidized price for the milk Indulac turns into UHT milk for competition with fresh milk that is unreasonable and arbitrary. *See* 04-cv-1840, Docket No. 1. As a result of ORIL's Regulation No. 1, Indulac has received inequitable profit from the UHT milk selling business for approximately twelve (12) years.

The Court issued a Preliminary Injunction ordering ORIL to "adopt a temporary mechanism that will allow the processors to recover the new rate of return they are entitled to (whatever that may be) for the year 2003 (base cost year of the present structure) and up to the day when they begin to recover said rate base on the new regulatory standards and corresponding order." In complying with the Preliminary Injunction, the Court instructed ORIL to "act through regulatory accruals, special temporary rates of return or any other available mechanism of his choosing." *Vaquería Tres Monjitas v. Laboy*, 2007 WL 7733665, at *48 (D.P.R. July 13, 2007), *aff'd sub nom. Vaquería Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464 (1st Cir. 2009). Docket No. 14, ¶ IV-8. *See* Docket No. 23, ¶ IIB-8; *see also* 04-cv-1840, Docket No. 11-1, pp. 46-52.

Pursuant to the Preliminary Injunction issued by the Court, in April 17, 2008, ORIL promulgated a Price Order (hereinafter, the "April 2008 Price Order"). The April 2008 Price Order followed the required processes under Puerto Rico law. The April 2008 Price Order provided a regulatory accrual sur-charge upon every quart of fluid milk sold in Puerto Rico, and was imbedded in the price of the products sold to the consumer for the purpose of compensating respondents for their lost revenues. Docket No. 14, ¶ II-9; *see also* Docket No. 23, ¶ IIB-9. The Court provided the parties an opportunity to challenge the April 2008 Price Order. *See* 04-cv-1840, Docket No. 833.[2]

The Court repeatedly recognized that the regulatory accrual sur-charge approved by ORIL in 2008 was an effort to comply with the preliminary injunction. The First Circuit agreed with the Court's reasoning noting that "[i]n compliance with the district court's injunctive order, ORIL adopted an administrative order which directed that 1.5 cents from the sale of each quart of milk be earmarked for the purpose of complying with the regulatory accrual mechanism." *Vaquería Tres Monjitas, Inc. v. Irizarry*, 600 F.3d 1, 2 (1st Cir. 2010). This regulatory accrual sur-charge on all fluid milk remained in effect during litigation through several Price Orders issued from 2008 to 2013, and until a Settlement Agreement was executed between the parties.

In the Settlement Agreement, the parties agreed to defer the regulatory accrual sur-charge on all fluid milk from November 7, 2013 to December 31, 2016, that is, for the years 2014, 2015 and 2016. Accordingly, on December 26, 2016, ORIL informed all parties

---

[2] Six challenged regarding the April 2008 Order were filed, to wit: PRDFA's challenge (Docket No. 858); Tres Monjitas' Challenge (Docket No. 859); Suiza's Challenge (Docket No. 861), Indulac's Challenge (Docket No. 862), CUD's Challenge (Docket No. 863) and Ganaderos' Unidos Challenge (Docket No. 865).

in the milk industry of the scheduled increase of three (3) cents over fresh milk effective January 1, 2017. Given that the scheduled increase was part of the Settlement Agreement executed by the parties and approved by the Court, there was no need to comply with administrative proceedings prior to its implementation.

The June 2017 Price Order subject of the instant claim was issued on May 31, 2017 by the Administrator and notified to Indulac on the same date. *See* Docket No. 11-1, pp. 29-33 and 35. Such Price Order imposed a three-cent ($0.03) increase on the price of UHT milk to be paid at the consumer level from $1.92 to $1.95. *Id.* pp. 29-33. Indulac affirms that the Settlement Agreement was only pertaining the price of fresh milk, and did not include UHT Milk. Further, Indulac contends that it was not part of the Settlement Agreement, thus, its covenants are not applicable to Indulac.

The Court finds that Indulac is grossly mistaken. Indulac appeared in case captioned *Vaquería Tres Monjitas, Inc. v. Comas-Pagán*, civil case number, 04-cv-1840 (DRD), as an intervenor. Indulac even challenged the Administrative Order complying with the Court's Preliminary Injunction but only as to biweekly reporting imposed to its balance plant credit. *See* 04-cv-1840, Docket No. 833. Then, after the execution of the Settlement Agreement but prior to the approval of the same, the Court granted Indulac ample opportunity to challenge the Settlement Agreement. Even the First Circuit recognized that "[i]t is true that the district court entered the Agreement on November 7 without first hearing PRDFA's objections. But it is also true that the court immediately stayed its order in light of the objections and gave PRDFA (Indulac) ample opportunity to review the Agreement and be heard." PRDFA v. Pagán, 748 F.3d 13, 20 (1st Cir. 2014).

(Emphasis ours)[3]. On its second chance to challenge the regulatory accrual sur-charge, Indulac filed a challenge to the agreement. *See Motion to Alter or Amend Judgment Pursuant to Rule 59(e),* 04-1840, Docket No. 2409 contending "ORIL pretend[ed] to shift a significant portion of the burden of the illegally agreed regulatory accrual amount or payout to [Indulac]." *Id.* p. 11. Indulac further challenged the elimination of the balance credit it did not want to begin with. *Id.* The Court denied Indulac's motion to alter or amend judgment. *See* 04-cv-1840, Docket No. 2456.

Moreover, the Court notes that the June 2017 Price Order subject to the instant controversy arises directly from the Settlement Agreement. Further, the Court retained jurisdiction over the enforcement of the Settlement. *See* 04-cv-1840, Docket No. 2347 and 2351.

> "Based upon the Order and Judgment approving the Settlement Agreement of October 29, 2013, this case is now closed for statistical purposes as the Court will, however, retain jurisdiction for compliance purposes of all the covenants of the Settlement Agreement of October 29, 2013, or any other related matter and/or remedy related to the full compliance of the Settlement Agreement of October 29, 2013."

04-cv-1840, Docket No. 2347, p. 3. Accordingly, Indulac filed an appeal that was dismissed by the First Circuit for lack of appellate jurisdiction because it was untimely. *See Vaquería Tres Monjitas, Inc. v. Comas-Pagán*, 772 F.3d 956, 960 (1st Cir. 2014); see also 04-cv-1840, Docket Nos. 2459 and 2521.[4] Notwithstanding *res judicata,* the Court continues on the merits.

---

[3] The Court notes that the word "Indulac" is of the Circuit Court.
[4] Hence, there is a *res judicata* problem for Indulac as to this matter. See *Porn v. Nat'l Grange Mut. Ins. Co.,* 93 F.3d 31 (1st Cir. 1996)

The Court must now address individually the parties' contentions that according to Suiza and ORIL, warrant a dismissal of the instant claim.

## A.    *The Settlement Agreement is the Equivalent of a Consent Decree:*

It is Suiza and ORIL's contention that upon the entry of Settlement, the document became the operative document relating to the regulatory accrual sur-charge to be imposed in the milk industry. As such, its implementation does not require compliance with *Act 34* requirements. Further, they allege that the Settlement Agreement is similar in nature to a consent decree. The Court agrees with ORIL's reasoning for the following reasons.

The Supreme Court has affirmed that "[a] consent decree no doubt embodies an agreement of the parties and thus in some respects is contractual in nature. But it is an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees." *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 378 (1992). *See Railway Employes v. Wright*, 364 U.S. 642, 650–651 (1961). Furthermore, "it is clear that, even absent the entry of a formal consent decree, if the district court either incorporates the terms of a settlement into its final order of dismissal or expressly retains jurisdiction to enforce a settlement, it may thereafter enforce the terms of the parties' agreement." *Am. Disability Ass'n, Inc. v. Chmielarz,* 289 F.3d 1315, 1320 (11th Cir. 2002). "More importantly, it is the agreement of the parties, <u>rather than the force of the law upon which the complaint was originally based</u>, that creates the obligations embodied in a consent decree." *Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 522 (1986). As

such, "[a] consent decree is a judgment, has the force of res judicata, and it may be enforced by judicial sanctions, including, as in this case, citations for contempt." *S.E.C. v. Randolph*, 736 F.2d 525, 528 (9th Cir. 1984). *See United States v. Naftalin*, 441 U.S. 768, 775-776 (1979) (Emphasis ours). Further, the First Circuit has consistently recognized that:

> "[t]he entry of a consent decree does not "kill" a case or terminate a district court's jurisdiction. Rather, when, as now, an injunction entered pursuant to a consent decree has ongoing effects, **the issuing court retains authority to enforce it**. *See e.g., System Fed'n No. 91, Etc. v. Wright,* 364 U.S. 642, 647, 81 S.Ct. 368, 371, 5 L.Ed.2d 349 (1961) (explaining that structural injunctions "often require [ ] continuing supervision by the issuing court **and always a continuing willingness to apply its powers and processes on behalf of the party who obtained th[e] equitable relief"**) . . . This authority is part of a court's inherent powers and exists regardless of whether a particular consent decree expressly so provides.5 *See Swift*, 286 U.S. AT 114, 52 S.Ct. at 462; *see also* Fed.R.Civ.P. 60(b)(5)-(6)." *In re Pearson*, 990 F.2d 653, 658 (1st Cir. 1993)." (Emphasis added).

The Court adds that, "[a] consent decree is not simply a contract entered into between private parties seeking to effectuate parochial concerns. [. . .] The court stands behind the decree, ready to interpret and enforce its provisions." *Id.*

It should also be noted that "[b]ecause a consent decree is a "judicial act" rather than an agency act, Federal Defendants are not required to ensure that their stipulation to the proposed consent decree complies with th[is] statute[]." *Turtle Island Restoration Network v. U.S. Dep't of Commerce*, 834 F. Supp. 2d 1004, 1011 (D. Haw. 2011), aff'd, 672 F.3d 1160 (9th Cir. 2012).

Indulac contends that the June 2017 Price Order does not comply with Puerto Rico law, i.e., Law 170 of August 12, 1988 as amended until 2005, also known as the *Puerto Rico Uniform Administrative Act* (hereinafter "LPAU"). P.R. Laws Ann., tit. 3 §§ 2101, et seq..

Particularly Indulac contends that 2.1 and 2.2 of LPAU require public notice and comment from Puerto Rico executive branches agencies when enacting regulations. *Id.* §§ 2121, 2122. The Court disagrees. A Settlement Agreement was executed and approved by the Court. Challenges to the same were permitted, considered and eventually denied. The First Circuit denied this issue when brought for its consideration in appeal. Thus, not only is the Settlement Agreement similar in nature to a consent decree, but it in full force to this day, and the Court has jurisdiction to enforce the same by judicial sanctions, and contempt.

**B.** ***June 2017 Price Order Reestablished the Regulatory Accrual Sur-charge upon all Fluid Milk Pursuant to the Settlement Agreement:***

The June 2017 Price Order in controversy, reestablishes the regulatory accrual sur-charge upon all fluid milk pursuant to the Settlement Agreement executed by the parties and approved by the Court. Although Indulac contends that the subject to Settlement Agreement was only fresh milk, the Court strongly differs. The Settlement Agreement was applicable to all fluid milk. ORIL's deferment of the regulatory accrual sur-charge was only to be applicable during the years 2014, 2015 and 2016. Indulac's contentions are baseless, meritless and frivolous. The reestablished regulatory accrued sur-charge was to compensate for the 12 years that Suiza and Tres Monjitas received no increase whatsoever in price increase over all fluid milk. The beneficiaries where the consumers and Indulac, who during this period gained a large increase of the market. Indulac during this period was a balancing plant to help the industry as established by the regulatory Puerto Rican law. But now Indulac without the authority of the Secretary of Agriculture and the

Executive branch was purchased by private investors related to the form milk processors. There is currently a litigation in State Court as to this subject matter. *See Aponte Rivera v. Rivera Serrano, et al.*, SJ2016-CV-00270 (907).

Even more, considering Indulac was an intervenor in case number 04-cv-1840, and had prior knowledge of the Settlement Agreement and its covenants as well as when the regulatory accrual sur-charge would be reestablished. The Court cannot and will not entertain frivolous attempts from Indulac to deviate the actual nature of the Settlement Agreement, and its application as to all fluid milk.

As Indulac is aware, the June 2017 Price Order extends a regulatory accrual sur-charge that was adopted in 2008, and was in full force until Settlement in 2013. The same was reestablished upon the completion of the tolled period, pursuant to the Settlement Agreement. Consequently, the Court finds that June 2017 Price Order is a direct result of Judgment in case no. 14-cv-1840 as incorporated in Regulation No. 12.

### C.      *Dismissal is Warranted Pursuant to Fed. R. Civ. P. 12(b)(6):*

ORIL and Suiza are seeking dismissal against Indulac for its failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6); *see also* Docket Nos. 14 and 23. Indulac contends that the motion to dismiss is to be denied because "(i) Indulac alleged sufficient well-pleaded facts to show that it has a plausible entitlement to relief or (ii) because the motion doesn't comply with Rule 56 [Summary Judgment] of the FRCP." *See* Docket No. 21. Whereas, ORIL argues, "there is no compelling reason to convert the Administrator's motion to dismiss into one for summary judgment" since the "additional facts either arise directly from the attachments to the complaint and/or from the record

of related case that the District Court handled and to which Indulac was an intervening party." Docket No. 30.

Upon a careful review of the parties' positions and in the light most favorable to Indulac, the Court finds that motions to dismiss at Docket Nos. 14 and 23 are to be ruled upon as motions under Fed. R. Civ. P. 12(b)(6), given that the facts and allegations set forth therein, although not directly asserted in the complaint, are references to documents relied upon or incorporated by reference in the complaint, as well as contained in official documents, thus, are of unquestioned authenticity. *See New Memorial Assocs. v. Credit Gen. Ins., Corp.*, 973 F.Supp. 1027, 2019 (D.N.M. 1997). The documents and additional facts submitted by ORIL and Suiza in its motions, arise directly from the exhibits of the complaint and from documents pertaining to civil cases 04-cv-1840 and 08-cv-2191 in which Indulac was an intervenor. Thus, they are official documents from the Court.

Additionally, the controversy raised by Indulac was already subject to a litigation before the Court (14-cv-1840) that resulted in a Settlement Agreement, which was approved by the Court, and eventually turned into ORIL's Regulation 12, particularly considering that such agreement was approved as a "firm, final and unappealable judgment". 04-cv-1840, Docket No. 2322, p. 5. The document also waived "any defense they may have to the enforcement of th[e] Agreement." *Id.* As stated before, the June 2017 Price Order was issued by ORIL pursuant to Judgment in case number 14-cv-1840 and ORIL's Regulation 12. Indulac was duly informed of the contents of the same, and was afforded the opportunity to challenge its covenants. Moreover, the agreed upon regulatory accrual sur-charge was to be reestablished in the year 2017 upon all fluid milk,

which includes UHT milk. As per Section 2(4) of ORIL's Regulation 12, the definition of fluid milk is the following:

> "Fluid milk – refers to the raw milk that the processing plants receive and retain for its homogenization and pasteurization or ultra-pasteurization and homogenization processing or aseptic processing. **Examples of fluid milk are fresh milk and UHT milk**. The fluid milk products to be included are those listed by the Code of Federal Regulations, 7 CFR 1000.15 – Fluid Milk Products." (Emphasis added).

Consequently, even when accepting as true all of the allegations contained in the complaint, the Court cannot find plausible claim for relief in its contents.

Further, the Court exercising its jurisdiction over the enforcement of Judgment in civil case number 04-cv-1840 (DRD) orders Indulac to comply with the covenants agreed therein and with the June 2017 Price Order over UHT milk. Failure to duly comply with the same will result in contempt of the Court.

All parties are to advise the Court the amount that Indulac has deposited in the Court and how the monies are to be distributed between Suiza and Tres Monjitas for disbursement purposes, within ten (10) days of this Order.

## IV.    CONCLUSION

For the reasons elucidated above, the Court **GRANTS** defendants, ORIL and Suiza's motions to dismiss. (Docket Nos. 14 and 23). Judgment of dismissal is to be entered accordingly.

**IT IS SO ORDERED.** In San Juan, Puerto Rico, this 28th day of March, 2018.

*S/Daniel R. Domínguez*
Daniel R. Domínguez
United States District Judge